UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN KARL BRIMAGER,<br><br>Defendant. | CASE NO. 13-cr-02381 JM<br><br>ORDER DENYING MOTION TO DISMISS THE SUPERSEDING INDICTMENT |
|---|---|

Defendant Brian Karl Brimager ("Brimager") is charged in a superseding indictment alleging ten counts of obstruction of justice under 18 U.S.C. § 1512(c)(2), one count of false statement to a federal officer under 18 U.S.C. § 1001, and two counts of falsification of records under 18 U.S.C. § 1519. Dkt. No. 28. On February 20, 2014, Brimager filed a motion to dismiss the obstruction of justice claims in Counts 1through 9, as well as in Counts 12 and 13, because the alleged conduct preceded any criminal investigation or Grand Jury proceedings. Dkt. No. 32. On March 28, 2014, the court held a hearing and took the motion to dismiss under submission. For the reasons set forth below, Brimager's motion to dismiss is DENIED.

## BACKGROUND

The following factual background is taken from the Government's allegations in the first superseding indictment.

Brimager and Yvonne Baldelli ("Baldelli"), both residents of California, began a romantic relationship in 2009. On September 26, 2011, they flew to Bocas Del Toro, Panama ("Bocas") and rented a room in a small hostel on Isla Carenero. They became friends with the manager of the hostel, who lived in the room next door to theirs. After their arrival, Brimager began emailing the mother of his young daughter ("K.W."), indicating his intent to move back to California to live with her and help raise their daughter. He did not mention Baldelli in these emails.

From the middle of October through late November 2011, Brimager began fighting with and physically abusing Baldelli. In November 2011, Brimager sent emails to K.W., his mother, and a friend, indicating his boredom with life in Panama and his intent to return to California soon. These emails did not mention Baldelli.

On November 24, 2011, the hostel manager was hospitalized when she broke her leg. She asked Brimager and Baldelli to watch over the hostel. During this time, no one lived next door to the couple. On November 26, 2011, the couple went to dinner and left the restaurant together. On that night or in the early morning hours, Brimager killed Baldelli, then dismembered and disposed of her body.

**Counts 1 through 10: Obstruction of Justice, 18 U.S.C. § 1512(c)(2)**

The obstruction of justice charges in Counts 1 through 10 are based upon numerous actions allegedly taken by Brimager in an attempt to hide Baldelli's murder. Generally, the Government alleges: (1) Brimager concealed and disguised Baldelli's death by disposing of her body so as to avoid detection, destroyed and disposed of physical evidence connected to her death, and manufactured a cover story to explain her disappearance; (2) he withdrew money from Baldelli's personal bank accounts in order to make it appear that she was still alive and match his cover story; and (3) he impersonated Baldelli in email in an attempt to trick her friends and family into believing she was still alive, thereby obstructing, influencing, and impeding the investigation into her disappearance and suspected death. The

///

Government details Brimager's actions taken in furtherance of the obstruction on pages 4 through 7.

The Government lists the following as the specific obstructive conduct associated with the ten individual counts of violating 18 U.S.C. § 1512(c)(2):

| Count | Date | Obstructive Conduct |
|---|---|---|
| 1 | 11/27/2011 | Brimager withdrew money from Baldelli's bank account in order to make it appear she was still alive. |
| 2 | 11/29/2011 | Brimager sent emails from Baldelli's personal email account, purporting to be from Baldelli, in order to make it appear as though she was still alive. |
| 3 | Late Nov. | Brimager destroyed physical evidence, including a bloody mattress, in order to prevent discovery of Baldelli's death. |
| 4 | Early Dec. | Brimager placed personal items belonging to Baldelli in trash bags for disposal in order to prevent their discovery. |
| 5 | 12/11/2011 | Brimager sent an email from Baldelli's personal email account, purporting to be from Baldelli, in order to make it appear as though she was still alive. |
| 6 | 12/11/2011 | Brimager accessed and withdrew money from Baldelli's personal bank accounts in order to make it appear as though she was still alive. |
| 7 | 12/20/2011 | Brimager sent an email from his personal email account to Baldelli's personal email account in order to make it appear as though she was still alive. |
| 8 | 12/20/2011 | Brimager sent an email from Baldelli's personal email account, purporting to be from Baldelli, in order to make it appear as though she was still alive. |

| | | |
|---|---|---|
| 9 | 12/26/2011 | Brimager sent an email from Baldelli's personal email account, purporting to be from Baldelli, in order to make it appear as though she was still alive. |
| 10 | 3/21/2012 | Brimager made materially false and misleading statements to FBI agents investigating the disappearance of Baldelli, to wit: that Baldelli left Panama for Costa Rica on November 27, 2011; that Baldelli took her Sony VAIO laptop computer with her when she left Panama; that the Sony VAIO laptop computer he possessed on March 21, 2012 was never in Panama; that before Baldelli left Panama, he had not been planning to return to the United States; that he never struck Baldelli; and that he never accessed Baldelli's email account or sent emails purporting to be from Baldelli. |

**Count 11: False Statement to a Federal Officer, 18 U.S.C. § 1001**

In Count 11, the Government contends Brimager lied to FBI Special Agent A. Masters while in the Southern District of California on March 21, 2012.

**Counts 12 and 13: Falsification of Records, 18 U.S.C. § 1519**

In Count 12, the Government contends Brimager falsified records, documents, and tangible objects, specifically by sending an email purporting to be from Baldelli in order to make it appear that she was still alive on December 20, 2011, with the intent to impede, obstruct, and influence the FBI investigation in violation of 18 U.S.C. § 1519.

In Count 13, the Government makes a similar claim regarding an email Brimager wrote on December 26, 2011, suggesting that Baldelli was still alive in an attempt to impede the FBI investigation.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b), "[a]ny defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by a motion." A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." U.S. v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (citations & internal quotations omitted); U.S. v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986). When considering a pretrial motion to dismiss all or part of an indictment, the court "must presume the truth of the allegations in the charging instruments." U.S. v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996). A Rule 12(b) motion to dismiss is not the proper way to raise a factual defense. Nukida, 8 F.3d at 669 (citing U.S. v. Smith, 866 F.2d 1092, 1096 n. 5 (9th Cir. 1989)).

An indictment is only required to "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it: (1) contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. U.S. v. Resendiz-Ponce, 549 U.S. 102, 108 (2007). An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all the elements necessary to constitute the offense. U.S. v. Binder, 10 F.3d 1368, 1476 (9th Cir. 1993). An indictment need only set forth the essential facts necessary to inform the defendant of what crime he or she is charged; it need not explain all the factual evidence to be proved at trial. Id.

## DISCUSSION

**I. Counts 1 through 9: Violation of 18 U.S.C. §1512(c)(2)**

Under 18 U.S.C. § 1512(c)(2), "[w]hoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined

under this title or imprisoned not more than 20 years, or both." An "official proceeding" can mean one of several types of proceeding under the statute:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1)(A)-(D). Section 1512(f)(1) further provides that "an official proceeding need not be pending or about to be instituted at the time of the offense. . . ." 18 U.S.C. § 1512(f)(1).

While "an official proceeding need not be pending or about to be instituted at the time of the offense," Brimager contends the Government is nevertheless required to prove that he had either contemplated or foreseen that an official proceeding would be forthcoming in order to have violated Section 1512(c)(2). See U.S. v. Friske, 640 F.3d 1288, 1292 (11th Cir. 2011)("But, as the Supreme Court observed in Arthur Andersen, '[i]t is . . . one thing to say that a proceeding need not be pending or about to be instituted at the time of the offense, and quite another to say a proceeding need not even be foreseen.' . . . Thus, in this case, the government was required to prove that Friske knew of, or at least foresaw, the forfeiture proceeding.")(quoting Arthur Andersen, 544 U.S. at 707-08)). Indeed, the Supreme Court has read a "nexus" requirement into two other obstruction of justice statutes, 18 U.S.C. § 1503 and 18 U.S.C. § 1512(b)(2). Specifically, in United States v. Aguilar, 515 U.S. 593 (1995), the Supreme Court held that under Section 1503, the government must not only prove that a defendant knew of a pending judicial or grand jury proceeding and intended to obstruct it, it must also prove a nexus linking

the defendant's obstructive conduct and a judicial proceeding—"that the act [has] a relationship in time, causation, or logic with the judicial proceeding" so that it may be said to have the "natural and probable effect" of interfering with the due administration of justice. Id. at 599. Extending its ruling in Aguilar, the Supreme Court decided in Arthur Andersen LLP v. United States, 544 U.S. 696 (2005), that an official proceeding must be foreseeable at the time of the obstructive act before a person can be liable for obstruction of justice under Section 1512(b). Id. at 707-08. While the Ninth Circuit has yet to address the issue, several circuits have found the nexus requirement in Aguilar and Arthur Andersen extends to obstruction charges under Section 1512(c)(2) as well.[1]

Here, Brimager argues the superseding indictment alleges nothing, either express or implied, that would suggest he could have foreseen or contemplated there might be an "official proceeding" forthcoming or that his conduct might affect it at the time of his alleged actions. Specifically, Brimager contends the indictment shows Baldelli's disappearance took place on a small island off Panama where the United States generally has no jurisdiction. He argues this would lead a reasonable person to believe, at most, that the FBI was simply gathering information as a courtesy to the Panamanian authorities when it initiated its investigation in February 2012. Moreover, Brimager contends the superseding indictment does not imply or suggest that he knew anything about an investigation until the FBI contacted him for an interview in March 2012. He emphasizes a missing persons report was not even filed in this case until late January 2012. As all of the actions alleged in Counts 1 through 9 preceded the initiation of the FBI investigation and Grand Jury process, Brimager contends these counts should be dismissed as there was no

---

[1] See U.S. v. Burge, 711 F.3d 803, 810 (7th Cir. 2013)(applying the foreseeable official proceeding requirement to § 1512(c)(2)); U.S. v. Bennett, 664 F.3d 997, 1013 (5th Cir. 2011) (same) *vacated on other grounds by* —— U.S. ——, 133 S. Ct. 71 (2012); U.S. v. Friske, 640 F.3d 1288, 1292 (11th Cir. 2011) (same); U.S. v. Phillips, 583 F.3d 1261, 1263–64 (10th Cir. 2009) (same); U.S. v. Carson, 560 F.3d 566, 584 (6th Cir.2009) (same); U.S. v. Reich, 479 F.3d 179, 185-186 (2d Cir. 2007) (same).

foreseeable official proceeding at the time of his alleged obstructive conduct.[2]

Assuming the nexus requirement articulated in Aguilar and Arthur Andersen would extend to violations of Section 1512(c)(2), the Government asserts Brimager is nevertheless improperly asking this court to determine a factual issue, i.e. the foreseeability of the official proceeding, which is a matter within the province of the jury and reserved for trial. As support for this proposition, the Government relies upon three published district court cases in which the court determined that the nexus requirement of Section 1512(c) is a jury question that need not be alleged in the indictment.[3] See U.S. v. Ring, 628 F. Supp. 2d 195, 223-224 (D.D.C. 2009)(holding that the nexus requirement of section 1512(c)(2) is a jury question and need not be alleged in the indictment); U.S. v. Moyer, 726 F. Supp. 2d 498, 510-511 (M.D. Pa. 2010)("[A] nexus need not be alleged in an indictment for obstruction of justice [under § 1512(c)(2)]; it is an element which must only be proven to the jury beyond a reasonable doubt."); U.S. v. Russell, 639 F. Supp. 2d

---

[2] Brimager also relies upon language from the recent Ninth Circuit case, U.S. v. Ermoian, 727 F.3d 894 (9th Cir. 2013), as support for dismissing Counts 1 through 9. While considering whether an FBI investigation constitutes an official proceeding under Section 1512(f)(1), the Ninth Circuit observed: "By contrast, if we were to read the phrase 'official proceeding' to include an FBI investigation, as the Government urges us to do, this subsection of the statute would work to criminalize actions taken before an investigation was even 'pending or about to be instituted.' We do not think that the obstruction of justice statute was intended to reach so far back as to cover conduct that occurred even pre-criminal-investigation." Id. at 901-902. However, as noted by the Government in its response and by the court at the hearing on Brimager's motion, this language from Ermoian is dicta that was unnecessary to the ultimate decision of the court. The essential holding of Ermoian is that an FBI investigation does not qualify as an official proceeding, a conclusion that neither party disputes in this case.

[3] See also U.S. v. Black, 469 F. Supp. 2d 513, 543 (N.D. Ill. 2006) ("Defendant Black essentially asks the Court to make a factual determination that the government cannot prove a nexus between the allegedly obstructive act and the grand jury investigation, or between the allegedly obstructive act and the criminal proceeding. Such a determination is for the jury, not the Court. The Court will instruct the jury as to any nexus requirement under Section 1512(c)(1), to the extent such a requirement exists."); U.S. v. Triumph Capital Group, Inc., 260 F. Supp. 2d 470, 475 (D. Conn. 2003)("To the contrary, as the government contends, the nexus requirement must only be proved at trial. Specifically, to prove that Spadoni and Triumph had the specific intent to obstruct the grand jury, the government must offer evidence of conduct 'that, in [Spadoni's] mind, has the 'natural and probable effect' of obstructing or interfering with [the grand jury].'" (citations omitted)).

226, 234-35 (D. Conn. 2007)(finding the allegations sufficiently alleged a nexus between the defendant's conduct and an official proceeding or investigation and reserving the issue of whether the government's evidence will be sufficient to prove that nexus for trial) *overruled on other grounds by* U.S. v. Gray, 642 F.3d 371 (2d Cir. 2011).

Having reviewed the relevant case law, the court concludes Brimager's arguments lack merit. Rather, this law buttresses the following conclusions: (1) the argument that the nexus requirement need be alleged in the indictment conflates "pleading with proof"; (2) neither Aguilar nor Arthur Andersen held that the "nexus requirement" was an element that must be alleged in the indictment; (3) neither Aguilar nor Arthur Andersen involved the sufficiency of the indictment, but rather the sufficiency of the evidence following a conviction; and (4) a motion to dismiss for lack of nexus essentially requires the court to make a factual determination best left for a determination by a jury, not the court. The same rationale applies here. Brimager asks the court to dismiss the obstruction charges in Counts 1 through 9 based upon a factual determination that the Government cannot prove a nexus between his obstructive act and an official proceeding. While the Government must ultimately establish the nexus described in Aguilar and Arthur Andersen, the question of whether a defendant contemplated or foresaw an official proceeding is a question of fact for the jury, not the court.

Thus, at the time of trial, the court will instruct the jury as to the appropriate nexus requirement, as well as the Government's burden of proof.

**II. Counts 12 and 13: Violation of 18 U.S.C. § 1519**

Obstruction of justice charges under section 1519 are based upon the alleged destruction, alteration, or falsification of records in federal investigations and bankruptcy. Specifically, section 1519 applies to anyone who:

> [K]nowingly alters, destroys, mutilates, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration

of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter . . . .

18 U.S.C. § 1519. Counts 12 and 13 of the superseding indictment allege Brimager knowingly falsified records, by accessing Baldelli's email account and sending a series of emails, purporting to be from Baldelli, in order to make it appear that she was still alive; and that he did so with the intent to impede, obstruct, or influence the investigation into the disappearance and death of Baldelli, a matter within the FBI's jurisdiction.[4]

In his motion to dismiss, Brimager briefly reasserts his arguments regarding Counts 1 through 9 as to Counts 12 and 13. He contends section 1519 requires a defendant to have the specific intent to impede or obstruct an investigation. See U.S. v. Stevens, 771 F. Supp. 2d 556, 561-562 (D. Md. 2011). Brimager emphasizes Counts 12 and 13 allege conduct occurring on December 20, 2011, and December 26, 2011, more than a month before a missing person report was filed with local Panamanian authorities. Because there is no rational basis to support charges that such alleged conduct was done with the specific intent to impede an investigation by an agency of the United States government, Brimager asks the court to dismiss Counts 12 and 13.

In response, the Government contends violations of section 1519 do not require there to have been a pending federal investigation at the time of the alleged obstructive conduct. The Government contends the plain language of the statute reveals that it covers conduct intended to impede not only a pending investigation of a matter but also conduct done in "in relation to or contemplation of the investigation of any matter." 18 U.S.C. § 1519; see also U.S. v. Moyer, 674 F.3d 192, 206 (3d Cir. 2012) (finding that section 1519 does not require the existence of a federal investigation before criminal liability may attach). Moreover, the

---

[4] Counts 12 and 13 address the same allegedly obstructive conduct charged in Counts 8 and 9 as violating section 1512(c)(2).

1 Government contends section 1519 does not require proof of a defendant's specific
2 intent to impede a federal investigation or a specific federal statute.  Specifically,
3 the Government contends the federal aspect of section 1519 is a jurisdictional
4 element requiring the matter being investigated to fall within the jurisdiction of the
5 United States, rather than a mens rea element requiring a defendant to intentionally
6 impede a federal investigation or specific federal statute.[5]

7     Here again, Brimager conflates pleading with proof.  Assuming specific
8 intent is required under the statute, whether Brimager's alleged conduct was done
9 with the specific intent to impede an investigation by an agency is not an
10 appropriate issue for the court to resolve at this stage in proceedings as it is a
11 question more properly reserved for the jury to consider at trial.   Inasmuch as
12 Counts 12 and 13 satisfy the pleading requirements by tracking the language and
13 elements of section 1519 and sufficiently put Brimager on notice of the charges
14 against him, Brimager's motion to dismiss Counts 12 and 13 is denied.

## CONCLUSION

16     For the reasons set forth above, Brimager's motion to dismiss Counts 1
17 through 9 and Counts 12 and 13 is DENIED.

18 **IT IS SO ORDERED.**
19 DATED: April 17, 2014

20 Hon. Jeffrey T. Miller
United States District Judge

---

[5] See U.S. v. Gray, 642 F.3d 371, 377 (2nd Cir. 2011)("By the plain terms of §1519, knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime."); U.S. v. Yielding, 657 F.3d 688, 713-14 (8th Cir. 2011)("the term 'knowingly' in § 1519 modifies only the surrounding verbs" and that the matter obstructed need only be "within the jurisdiction of a federal agency as a factual matter"); U.S. v. McQueen, 727 F.3d 1144, 1152-53 (11th Cir. 2013)(finding "any matter within the jurisdiction" is merely a jurisdictional element, for which no mens rea is required); U.S. v. Moyer, 674 F.3d 192, 208 (3d Cir. 2012)("[A] defendant need not intend to obstruct or impede a specific federal investigation; the government must prove only that (1) a defendant intended to impede the investigation of 'any matter' and (2) the matter at issue was ultimately proven to be within the federal government's jurisdiction."); U.S. v. Yielding, 657 F.3d 688, 712-14 (8th Cir. 2011)(finding government was not required to prove that defendant knew the "matter" at issue was within the jurisdiction of a department or agency of the United States).