UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>BRIAN KARL BRIMAGER,<br><br>        Defendant. | Case No.: 13cr2381-JM<br><br>**ORDER ON DEFENDANT'S MOTION TO MODIFY SENTENCE UNDER 18 U.S.C. § 3582(c)(2)** |

  Defendant Brian Karl Brimager has filed a Motion to Modify Sentence Under 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the Sentencing Guidelines, (Doc. No. 159). The Government filed a Response in Opposition (Doc. No. 166) and Defendant submitted a Reply (Doc. No. 173). A hearing on the motion was held on January 13, 2025. Having carefully considered these submissions, the arguments made by counsel, and the authorities presented, the court denies Defendant's Motion.

## BACKGROUND

  On June 26, 2013, the Government filed an information charging Defendant with ten counts of Obstruction of Justice in violation of 18 U.S.C. § 1512(c)(2) and one count of False Statement to a Federal Officer in violation of 18 U.S.C. § 1001. A superseding

1

13cr2381 (JM)

information was filed on February 24, 2016. (Doc. No. 132.) On February 24, 2016, Defendant entered into a plea agreement with the Government, made pursuant to Federal Rule of Criminal Procedure 11(c), wherein he pled guilty to the Foreign Murder of a United States National – Second Degree - in violation of 18 U.S.C. § 1119, § 1111.[1] (Doc. No. 135.)

The plea agreement provided that the "sentence imposed [would] be based on the factors set forth in 18 U.S.C. § 3553(a)." Doc. No. 135 at 7[2]. It also stated that Defendant understood "that in imposing the sentence, the sentencing judge, must consult the United States Sentencing Guidelines (Guidelines) and take them into account." *Id.* Per the terms of the plea agreement, the Government recommended Defendant be sentenced to 30 years and Defendant recommended 20 years in custody. (*Id.* at 10.) In exchange for the United States' concessions in the plea agreement, Defendant waived any right to appeal the conviction and sentence. (*Id*. at 11.)

On May 25, 2016, the court held a sentencing hearing. (Doc. No. 156; Docket Entry 151.) At sentencing, the court conducted an advisory Guidelines analysis, carefully analyzed the relevant factors under 18 U.S.C. § 3553(a), then sentenced Defendant to a 26-year (312 month) custodial sentence followed by five years of supervised release, a $10,000 fine, and restitution in the amount of $11,132 (Doc. No. 156 at 92-94). The court entered judgment on May 26, 2016. (Doc. No. 153.)

In the motion currently before the court, pursuant to 18.U.S.C § 3582(c)(2) Defendant seeks to reduce his sentence to 23.5 years (282 months) following Amendment 821 to the Guidelines. Essentially, Defendant advances three grounds for the reduction: (1) his low risk to public safety; (2) his custodial rehabilitation and other applicable 3553(a) factors; and (3) the challenging custodial conditions he has faced.

---

[1] As part of the plea agreement the Government agreed to dismiss the remaining charges without prejudice. (Doc. No. 135 at 2.)

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

# DISCUSSION

Generally, a court may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). However, under 18 U.S.C. § 3582(c)(2), a defendant may move for a reduction if he was sentenced based on a sentencing range that was subsequently lowered by a retroactive amendment to the Federal Sentencing Guidelines. In late 2023, the Sentencing Commission approved Amendment 821, which reduced the additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence. *See* U.S.S.G. Supp. to App. C., amend 821, Part A. Specifically, Part A modified U.S.S.G. § 4A1.1(e) to now add one criminal history status point instead of two "if the defendant (1) receives 7 or more points under subsection (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(e). Thus, under the Amendment, offenders such as Defendant, with six or fewer criminal history points no longer receive any status points. The Commission also voted to make these changes retroactive to U.S.S.G. Amendment 821.

### a. Sentence Imposed Pursuant to Rule 11 Plea Agreement

Before turning to Defendant's eligibility under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10(a), the court must first determine if the decision to accept the plea agreement and imposition of the original sentence was based on the Guidelines. In *Freeman v. United States,* 564 U.S. 522 (2011), the Supreme Court examined whether "defendants who enter into plea agreements that recommend a particular sentence as a condition of the guilty plea" may seek relief under § 3582(c)(2)[3]. 564 U.S. at 525.

---

[3] *Freeman* failed to produce a majority opinion, resulting in four justices joining a plurality opinion, Justice Sotomayor authoring a concurring opinion, and four justices coming together in a dissent.

1 Initially, the Ninth Circuit interpreted the *Freeman* decision to mean that sentences
2 imposed pursuant to a Rule 11 plea agreement were not "based on"
3 the Guidelines, with minor exceptions, and, therefore, could not be modified under §
4 3582(c)(2). *See United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012). In 2016, the
5 Ninth Circuit overruled *Austin,* in *United States v. Davis,* 825 F.3d 1014 (9th Cir. 2016),
6 holding that "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge's
7 decision to accept the plea and impose the recommended sentence is likely to be based on
8 the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2)
9 relief." 825 F.3d at 1026 (citing *Freeman*, 564 U.S. at 534).

10 Here, although Defendant was sentenced pursuant to a Rule 11 agreement, the plea
11 agreement "was clearly rooted in the Guidelines." *Davis*, 825 F.3d at 1027. Indeed, the
12 plea agreement made multiple references to the Guidelines. It stated that Defendant
13 understood "that in imposing the sentence, the sentencing judge, must consult the United
14 States Sentencing Guidelines (Guidelines) and take them into account." *Id.* And the
15 Parties jointly recommended a base offense level (U.S.S.G. § 2A1.2) of 38, Specific
16 Offense Characteristic – Obstruction of Justice (U.S.S.G. § 3C1.1) upward adjustment of
17 +2 and an Acceptance of Responsibility (U.S.S.G. § 3E1.1(a) and (b)) downward
18 departure of -3. (Doc. No. 135 at 8.) Further, the Parties agreed that the Government
19 could seek a further two-level upward departure in Defendant's offense level based on
20 Defendant's conduct. (*Id.* at 9.)

21 Moreover, at sentencing, the court initially conducted an advisory Guidelines
22 analysis, calculating Defendant's base offense level of 38, adding on an agreed upon two-
23 level upward adjustment for obstruction of justice (3C1.1.A) and adjusting downward
24 three levels for acceptance of responsibility. (Doc. No. 156 at 77). The court also
25 determined that Defendant's conduct qualified for an upward departure of two-levels
26 under 5K2.8 and/or 5K2 for heinous or egregious conduct, raising the total offense level
27 to a 39. (*Id.* at 78, 81-82, 89, 91). The court calculated Defendant's criminal history as
28 Category II based on 3 points, resulting in an advisory guidelines range of 292 to 365

months. (*Id*. at 78, 89.).

Carefully considering the advisory guideline range, the court determined that a custodial sentence of 26 years (312 months) was consistent with the Guidelines, accepted the Defendant's plea agreement, and imposed the 26-year sentenced, engaging in a thorough analysis of the relevant sentencing factors under 18 U.S.C. § 3553(a).

### b. *Eligibility under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10(a)*

Next, the court considers Defendant's eligibility under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10(a). Deciding whether a defendant is entitled to a sentence reduction under 18 U.S.C. § 3582(c)(2) is a two-step process. First, applying U.S.S.G. § 1B1.10(a), the court must determine whether Defendant is eligible for a reduction. *Dillon v. United States*, 560 U.S. 817, 826 (2010) ("A court must first determine that a reduction is consistent with § 1B1.10…."). Second, the court examines whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

#### i. *Entitlement under U.S.S.G. § 1B1.10(a)*

Having determined that Defendant may apply for relief under § 3582(c)(2), the court begins by conducting the first step of the inquiry. Section 1B1.10 of the Sentencing Guidelines sets forth the "applicable policy statements" governing sentence reductions. U.S.S.G. § 1B1.10. It provides a two-pronged analysis. The first prong requires the court to calculate the "amended guideline range that would have been applicable to the defendant if the amendment[] … had been in effect at the time the defendant was sentenced" but must "leave all other guideline application determinations unaffected." U.S.S.G. § 1B1.10(b)(1)[4]. In determining this amended guideline range, the court

---

[4] Guidelines Application Note 1(A) defines the § 1B1.10(a)(1) applicable guideline range as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to U.S.S.G. § 1B1.1(a) … determined before consideration of any departure provision in the Guidelines Manual or any variance."

substitutes the new amendment "for the corresponding guideline provisions that were applied when the defendant was sentenced," but must "leave all other guideline application decisions unaffected." *Id.*

For the second prong, the court applies U.S.S.G. § 1B1.10(b)(2) to limit the extent of the allowable reduction. If a defendant's guideline range has been lowered as a result of an amendment listed in § 1B1.10(d), the court has discretion to "reduce the defendant's term of imprisonment" consistent with § 1B1.10. U.S.S.G. § 1B1.10(a)(1). Indeed, section 1B1.10 specifies that a court may not reduce the term of imprisonment below the minimum amended guideline for any departure except where a defendant provides substantial assistance to the Government. § 1B1.10(b)(2)

Once the court ascertains the amended guideline range, it must determine whether the defendant's term of imprisonment is greater or less than the minimum of this range. Section 1B1.10(a)(2)(B) provides: "a reduction in the defendant's term of imprisonment" is not authorized if the new amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). If the defendant's term of imprisonment is less than the minimum of the amended guideline range, then the defendant is ineligible for a sentence reduction. *United States v. Ornelas*, 825 F.3d 548 (9th Cir. 2016).

Defendant's original base offense level was 38, before a two-level upward adjustment for obstruction of justice, a three-level downward adjustment for acceptance of responsibility, and a two-level upward departure for heinous and/or egregious conduct were applied, raising the total offense level to a 39. (Doc. No. 156 at 77, 78, 80-82, 89. 91.) Defendant's criminal history category was determined to be II, based on 3 points (*Id*. at 78, 89.) Defendant's original advisory guideline range, determined pre-amendment, was 292-365 months. Had Amendment 821 been in force at the time of Defendant's sentencing, his total offense would have remained at level 39, but with a criminal history category of I, with a post-amendment advisory guideline range of 262-327 months.

In other words, Amendment 821 would have lowered Defendant's U.S.S.G. § 1B1.10(a) applicable advisory guideline range from 292-365 to 262-327 months if it had been in force at the time of sentencing. Since Amendment 821 qualifies as a retroactive amendment under U.S.S.G. 1B1.10(d), and Defendant's original 312-month sentence is greater than the low end of the amended guideline, U.S.S.G. § 1B1.10(b)(2)(A) does not bar Defendant from seeking a reduction.

### ii. Discretion under 18 U.S.C. § 3582(c)(2) and applicable § 3553(a) factors

As Defendant qualifies for a sentence reduction under U.S.S.G., § 1B1.10(a), the court must perform the second step of the inquiry. "[18 U.S.C.] § 3582(c)(2) instructs a court to consider any applicable § 3553(a)[5] factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon,* 560 U.S. at 826; *see also* U.S.S.G. § 1B1.10, Application Note 1(B)(i) ("Consistent with § 3582(c)(2), the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted…."). In determining whether to exercise its discretion, the court is to consider Defendant's risk to public safety and his post-sentencing conduct. *See* U.S.S.G. 1B1.10, Application Note 1(B)(ii), (iii) (specifying that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posted by a reduction in the term of imprisonment[,]" and "[t]he court may consider [the defendant's] post-sentencing conduct" when determining whether a reduction is warranted).

### 1. Defendant's Public Safety Risk

Initially, at the second step, the court addresses, whether exercising its discretion in favor of Defendant would risk public safety. Relevant circumstances would appear to

---

[5] The introductory portion of § 3553(a) instructs courts to "impose a sentence sufficient, but not greater than necessary" to punish, deter, protect the public, and rehabilitate the defendant.

include a record of rehabilitation for Defendant as well as a period of several years of meaningful reflection on his reprehensible conduct. Defendant's record while in custody demonstrates a high level of rehabilitation and compliance with the policies and mandates of the Bureau of Prisons ("BOP"). Weighing against Defendant on the question of whether a reduced sentence would increase the risk to public safety would be the brutality and callousness of Defendant's conduct in this case. This court possesses no predictive ability, however, regarding Defendant's future impulse control when and if he might ever be provoked by someone else. Hence, the question of how public risk might be impacted by a sentence reduction for Defendant, although open to speculation, would not appear to be an automatic disqualifier for Defendant's request on the record presently before the court.

*2. Defendant's Custodial Rehabilitation and § 3553(a) Factors*

The court continues with the second step of the inquiry by noting relevant 3553(a) factors as well as Defendant's custodial rehabilitation, the circumstances surrounding Ms. Baldelli's death, Defendant's subsequent behavior and how Defendant preyed upon the Baldelli family's vulnerability by rendering them unwitting and hood-winked participants in his cover-up scheme. The court notes below that these factors were carefully considered during the original sentencing and could have, standing alone, justified the court imposing the Government's requested 30-year sentence. In imposing the original sentence, the court worked downward from at or near the high end of the recommended range of 20-30 years because of the brutality of the crime, the savagery of its immediate aftermath, and Defendant's obstruction of justice. Then, the court took into account the equities of Defendant, chiefly his military service and de minimis criminal history, ultimately arriving at a custodial sentence of 26 years or 312 months. All of this is a matter of record and as relevant today as at Defendant's original sentencing.

Indeed, the nature and seriousness of Defendant's offense and aggravated related conduct must not be minimized. Defendant murdered Yvonne Baldelli by stabbing her in the back with a knife while within the jurisdiction of Panama. Defendant then used his

machete to dismember Ms. Baldelli, stuffed her body parts into a green military style backpack, and discarded her hacked remains in the jungle. These were shockingly degrading and dehumanizing acts. After killing Ms. Baldelli, Defendant willfully obstructed and attempted to obstruct the investigation into her death by destroying, concealing, and disposing of evidence (including a blood-stained mattress, and Ms. Baldelli's dog, clothes, and jewelry), withdrawing money from Baldelli's bank account in Costa Rica after her death, and providing a false statement to a federal agent regarding Ms. Baldelli's disappearance. Brazenly, Defendant then deceptively assumed Ms. Baldelli's identity and fraudulently corresponded with her family members in an attempt to cover up his crime. His behavior caused Ms. Baldelli's family to delay reporting her missing and ultimately was responsible for hampering their search efforts. Simply put, Defendant provided false hope to Ms. Baldelli's family and unnecessarily inflicted roiling emotional turmoil upon them. All of this has cast a long shadow of pain and anguish for the Baldelli community of family and friends, the length of the which will last forever, not mere months or years.

The continuing nature of this traumatic stress and anguish was painfully and credibly on display during the impact statements of the Baldelli family community, particularly the parents, at the resentencing hearing on January 13, 2025. Their statements of unrelenting loss and emotional paralysis buttressed the proposition that although a custodial sentence may end at a designated point in time, allowing the offender to resume life, a loss such as the Baldelli family has suffered is forever. The court considers the nature and extent of the human damage done to a victim's family members by a violent offender to be relevant to the seriousness of the crime being assessed under the circumstances of the present motion, and particularly within an 18 U.S.C. § 3553(a) context. *See e.g. Kenna v. U.S. Dist. Ct for C.D. Cal.,* 435 F.3d 101, 1016 (9th Cir. 2006) ("The effects of a crime aren't fixed forever once the crime is committed …. The district court must consider the effects of the crime on the victims at the time it makes its decision with respect to punishment, not as they were at some point

in the past."); *U.S. v. Christensen*, 732 F.3d 1094 (9th Cir. 2006) ("Life-destroying impacts" reported by victims of crimes properly considered as 18 U.S.C. § 3553(a) factor).

The seriousness of Defendant's crime, therefore, weighs heavily against the granting of his motion, as do the relevant sentencing purposes of general and specific deterrence and protection of the public. Considering Defendant's history and characteristics, within the meaning of § 3582(c)(2) and § 3553(a), at the original sentencing, the court considered Defendant's negligible criminal history, consisting of only a single drunk driving conviction, essentially the stuff of a criminal history category I, and so stated during its allocution. The court spoke of crediting Defendant by either a criminal history departure to category I or treating the minimal criminal history as an equity, and chose the latter option. (Doc. No. 156 at 89, 90.) By doing so, the court accorded a significant sentence reduction at the time, and not an insignificant portion of the four-year difference between the Government's recommendation of 30-years custody and the Defendant's sentence of 26-years. In a sense, the primary grounds for Defendant's present motion, being Amendment 821 reducing his criminal history category to I was significantly accounted for by the court in recognizing the inequity of a criminal history category II at the time of sentencing and crediting Defendant in that regard.

The court also considered the likelihood Defendant would engage in similar conduct in the future when it imposed the original sentence and made no such finding then nor does it now find Defendant would likely repeat such conduct. Additionally, the court gave due deference to Defendant's military career when imposing sentence. And, although Defendant has now engaged in commendable post-sentencing conduct, including obtaining his Bachelor of Arts degree in Business Administration, maintaining employment at his institution, and acting as a facilitator, instructor and mentor to other inmates, the court does not believe that this work by itself or with other equities warrants the sentence reduction he seeks. *See Pepper v. United States,* 562 U.S. 476, 505 n. 17

(2011) ("Of course, we do not mean to imply that a district court must reduce a Defendant's sentence upon any showing of postsentencing rehabilitation."). Nevertheless, Defendant's custodial history should count in his favor in this analysis and accords it weight in its analysis.

### 3. *Custodial Conditions for Defendant*

The court is also mindful of the fact that those in custody were subjected to harsher than usual conditions of incarceration during the COVID pandemic; however, Defendant was not alone in having to endure a number of restrictions. The country, indeed, the world, lived under the shroud of COVID-19 and had to make daily lifestyle adjustments as tens of millions contracted COVID including Defendant. Notwithstanding, the measures taken by the BOP to mitigate the risks of COVID-19 transmission within its' population, the court finds post custodial restrictions on activity and isolation although factors that may be properly considered at this time of requested resentencing, do not merit sentencing reduction at this time, in whole or part.

As to Defendant's argument that the BOP's failure to provide him with the necessary dental care to treat his chronic periodontitis weighs in favor of the requested reduction, (Doc. No, 159 at 21-24), the court is not persuaded that his condition is a reason in whole or part for a sentence reduction within the context of 18 U.S.C. § 3553(a)(2)(D). Defendant, a young man at age 48, is in good health with no serious or life-threatening conditions. While Defendant's dental circumstances are a concern, the BOP is treating Defendant's periodontitis at this time. Moreover, Defendant's position fails to consider how serving the remainder of his original sentence would prevent him from receiving the appropriate treatment in the future. As evidenced by the medical records submitted (*see* Doc. No. 169), BOP has formulated a treatment plan to address Defendant's chronic periodontitis that aligns with his consulting expert's recommendation.

Finally, Defendant's assertion that the BOP's refusal to grant his request for a transfer to a facility closer to his family is a sentencing reduction factor under Section

3582(c)(2) is misplaced. Indisputably, the court's recommendation to designate Defendant near family to facilitate visitation has never been honored. The court is fully aware that it is not within its jurisdiction to order the BOP to designate a place of imprisonment for Defendant, nor is it the court's function to punish the BOP. However, it is perfectly appropriate for the court to express its dismay that its recommendation has never been followed and is confident that BOP can do better at some point in the foreseeable future and transfer Defendant to a facility closer to his family. Defendant is correct: unnecessary distance between a person in federal custody and his or her loved ones is harsh. It is unduly harsh and deprives an inmate of family contact, in particular.

## CONCLUSION

After careful consideration of all motion and opposition filings and accompanying exhibits, the oral arguments and statements of parties and witnesses, and for good cause, the court **DENIES** Defendant's motion for a sentence reduction under 18 U.S.C. §3582(c)(2) and U.S.S.G. § 1B1.10(a). (Doc. No. 159.) This decision is made after much thought and deliberation and with the understanding Defendant has engaged in commendable post-conviction rehabilitation and has no measurable criminal history to weigh against his application.

Simply stated, the elimination of two criminal history status points at Defendant's original sentencing hearing does not support a reduction of his sentence now. As discussed, Defendant was essentially accorded criminal history category I treatment. More importantly, however, the heinous and egregious circumstances of this murder and its aftermath combined with the emotional wreckage Defendant wrought by his actions justified 26-years of custody in 2016 as well as today. THE MOTION IS DENIED.

**IT IS SO ORDERED**.

Dated: January 22, 2025

_____
Hon. Jeffrey T. Miller
United States District Judge